*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

JAVONTE EDREECE ROSA,

    Defendant-Appellant.

UNPUBLISHED
July 16, 2026
12:35 PM

No. 367348
Kent Circuit Court
LC No. 22-006133-FC;
    22-006316-FC;
    22-006501-FH;
    22-006536-FC

Before: ACKERMAN, P.J., and REDFORD and FENNEY, JJ.

PER CURIAM.

Defendant, Javonte Edreece Rosa, appeals as of right his conviction of first-degree felony murder, MCL 750.316(1)(b). We affirm.

## I. FACTS AND PROCEEDINGS

The night of May 24, 2022, Rosa and his codefendants, Rhishy Javon Manning and Jaheim Hayes-Goree, began a crime spree in the greater Grand Rapids area. The spree continued into the morning of May 25, 2022. Officers from the Grand Rapids Police Department, the Kentwood Police Department, the Walker Police Department, the Wyoming Police Department, and the Kent County Sheriff's Office worked together to respond to reports of the criminal activity. Rosa, Manning, and Hayes-Goree began the spree in a stolen blue Chevrolet Equinox. The first crime event was an armed robbery at a Family Dollar store at 9:40 p.m. Rosa and Hayes-Goree entered the store with guns and stole money from the cash register. They fired their guns, but no one was shot. At 10:33 p.m., Hayes-Goree and Manning held Joseph Wilder at gunpoint while he was using the automated teller machine (ATM) at a Huntington Bank. Wilder was shot and killed. In the following hours, Manning, Rosa, and Hayes-Goree stole a white Audi sport utility vehicle, attempted a robbery outside a Radisson Hotel, attempted to break into a convenience store, and robbed a Speedway gas station attendant in Kentwood. These events were captured on the businesses' surveillance cameras. Flock traffic enforcement cameras recorded the movements of the Equinox and the Audi as they moved from crime scene to crime scene.

The spree ended when officers spotted the Audi and initiated a pursuit. The Audi fled but crashed near an apartment complex. Manning and Hayes-Goree ran from the crashed Audi but were pursued by a police drone and arrested. Rosa was not in the Audi during the pursuit. Law enforcement officers identified Rosa as the third perpetrator from text messages he exchanged with Manning on their iPhones. Rosa was arrested on May 26, 2022.

The perpetrators concealed their faces with face masks and the hoods of their sweatshirts. This prevented witnesses from observing their faces. While their faces could not be seen in any of the videos, the prosecutor used the distinctive shoes and other clothing items worn by Rosa and his codefendants to identify each of them in the surveillance videos. Hayes-Goree wore a light-gray or light-colored hooded sweatshirt and white "Croc" shoes or sandals. Manning wore a dark-colored hooded sweatshirt and white athletic shoes with a blue stripe around the bottom. Rosa wore a light-gray or light-colored hooded sweatshirt with yellow and red shoes. Rosa also wore a blue and orange varsity jacket in some of the events of the spree. Manning was wearing his shoes when he was arrested. Hayes-Goree discarded his shoes while he was running from the Audi, but one was found along the path of his flight. Rosa's shoes and jacket were found at his home after he was arrested.

The prosecutor's cases against defendants relied primarily on the surveillance videos and data from their smart phones. The prosecutor's evidence also included two firearms, including a Smith & Wesson nine-millimeter semiautomatic handgun with a clear extended magazine that was found near Rosa when he was arrested. The prosecutor offered expert testimony identifying bullets and spent casings as ammunition fired by these weapons. Law enforcement officers determined from Manning's and Rosa's cellular phone location data that their phones were in the vicinity of the locations when and where the crimes were committed, and when and where the Flock cameras recorded the vehicles.

Rosa was charged with armed robbery, MCL 750.529; conspiracy to commit armed robbery, MCL 750.157a and MCL 750.529; and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b; in the Family Dollar and Speedway robbery cases. He was charged with felony murder, conspiracy to commit armed robbery, and felony-firearm in the ATM robbery and shooting. In a fourth case, he was charged with possession of a firearm by a felon (felon-in-possession), MCL 750.224f; carrying a concealed weapon, MCL 750.227; and felony-firearm. These cases were consolidated for trial and consolidated with the cases against Manning and Hayes-Goree. Rosa and his codefendants were convicted of all charges against them. On appeal, Rosa challenges only his conviction of felony murder.

## II. NEWLY DISCOVERED EVIDENCE

Rosa moved for a new trial on the ground that Hayes-Goree and Manning signed written statements denying that Rosa had any involvement in the ATM robbery and associated murder. Manning later disavowed the statement, asserted he did not make it, that it was false, and that Rosa had submitted it without his permission. The trial court denied Rosa's motion, citing *People v*

*Terrell*, 289 Mich App 553; 797 NW2d 684 (2010), overruled in part on other grounds by *People v Grissom*, 492 Mich 296; 821 NW2d 50 (2012).[1]

We review a trial court's decision on a motion for a new trial for an abuse of discretion. *People v Johnson*, 502 Mich 541, 564; 918 NW2d 676 (2018). "An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes." *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (quotation marks and citation omitted). "A trial court necessarily abuses its discretion when it makes an error of law." *Id*.

"On the defendant's motion, the court may order a new trial on any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice." MCR 6.431(B). In *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003), our Supreme Court established a four-pronged test for determining whether a new trial should be granted on the basis of newly discovered evidence:

> For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. [Quotation marks and citations omitted.]

This Court's decision in *Terrell*, 289 Mich App 553, addressed whether a codefendant's posttrial statement exculpating a defendant can serve as newly discovered evidence under the first prong of the *Cress* test. In *Terrell*, the defendant and Reginald Myers had an argument with Deshawn Evans. *Id*. at 556. According to the prosecutor, the defendant shot Evans during the argument. *Id*. After the shooting, Myers and defendant ran to Dana Hudson's car and drove away. *Id*. The defendant was convicted of assault with intent to commit murder, MCL 750.83, and related firearms offenses. *Terrell*, 289 Mich App at 554. Hudson was also charged, but he was acquitted. *Id*. at 556. Hudson exercised his Fifth Amendment privilege and did not testify at trial. *Id*. The defendant moved for a new trial on the basis of newly discovered evidence, namely Hudson's testimony that Evans was the initial aggressor and that Myers, not the defendant, shot Evans. *Id*. at 557. According to Hudson's posttrial statement, the defendant and Evans struggled over the gun, Myers picked up the gun when it fell, and Myers, not the defendant, shot Evans. *Id*. at 557. The trial court granted the defendant's motion for a new trial, finding that "although the testimony was not newly discovered evidence, it was not available to defendant at the time of trial[.]" *Id*. This Court granted the prosecutor's application for leave to appeal. *Id*. at 558.

This Court began its analysis by addressing the first inquiry under *Cress*, 468 Mich at 692, namely whether Hudson's statement was newly discovered. *Terrell*, 289 Mich App at 559. The prosecutor argued "that newly available evidence does not equate with newly discovered evidence

---

[1] *Grissom*, 492 Mich 296, does not refer to *Terrell* by name. Our Supreme Court held in *Grissom* that a trial court may grant a new trial on the basis of newly discovered evidence for impeaching the complaining witness. *Id*. at 319-322.

and, as a consequence, the trial court's order granting defendant a new trial on the basis of Hudson's statements should be reversed." *Id*. at 560. The Court agreed that Hudson's proffered testimony was not newly discovered evidence; thus, the defendant failed to satisfy the first element of the *Cress* test. *Terrell*, 289 Mich App at 560. The Court in *Terrell* surveyed the federal circuit courts' decisions regarding a codefendant's testimony and found that the majority of the circuits agreed that a codefendant's belated exculpatory testimony was not newly discovered evidence. *Id*. at 562-567. The Court acknowledged that a defendant could be denied the benefit of potentially exculpatory testimony when a codefendant invoked his Fifth Amendment privilege, but emphasized that a defendant could pursue procedural remedies, such as moving for severed trials with limited immunity for the codefendant. *Id*. at 567. The Court found that the defendant was aware at all times that Hudson had been present during the shooting, and that he had the ability to give the exculpatory testimony. *Id*. at 569-570. The Court therefore reversed the trial court's decision to grant a new trial. *Id*. at 571.

Judge SHAPIRO agreed with the majority's decision to reverse but wrote in favor of a case-by-case approach. *Terrell*, 289 Mich App at 571 (SHAPIRO, J., concurring). He advocated following a First Circuit case, *United States v Montilla-Rivera*, 115 F3d 1060, 1066 (CA 1, 1997), which would "not . . . categorically exclude the testimony of a codefendant who asserted his Fifth Amendment privilege at trial under the first prong," but would consider the statement "with great skepticism . . . ." *Terrell*, 289 Mich App at 571 (SHAPIRO, J., concurring). Under this approach, the court would determine whether the defendant's proffered evidence of an exculpatory statement had a sufficient basis for further examination in an evidentiary hearing. *Id*. at 571-572. Judge SHAPIRO explained why the defendant in *Terrell* would not be entitled to a new trial (and presumably not entitled to an evidentiary hearing) under this test:

> In this case, defendant is not entitled to a new trial under the First Circuit's test. First, there was other evidence admitted that showed the victim was armed. Thus, defendant was able to present evidence in support of his self-defense claim. Second, defense counsel did not interview or attempt to interview the codefendant, thus undercutting the likelihood that there was a good-faith belief that he could offer exculpatory testimony. Third, there was no request for severance or for the codefendant's trial to occur first, a mechanism that might have avoided the Fifth Amendment problem. Fourth, there was no attempt to call the codefendant at trial and to require him to assert his Fifth Amendment privilege outside the presence of the jury. Fifth, there was no offer of proof at trial about what defendant believed his codefendant could testify to if he did not assert his Fifth Amendment privilege. These failures strongly suggest that the issue in this case related more to the desirability of an appellate parachute rather than the existence of known exculpatory testimony that was genuinely unavailable before defendant's conviction. [*Terrell*, 289 Mich App at 572-573 (SHAPIRO, J., concurring).]

MCR 7.215(J)(1) requires this Court to "follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990" unless the prior decision has been "reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule." Rosa argues in his appellate brief that his circumstances are factually distinguishable from *Terrell*, because, unlike the defendant in *Terrell*, Rosa did not know that his codefendants would exculpate him because he was not present at the ATM robbery. This

attempt at distinction is unconvincing, because Rosa knew that he and his codefendants were charged with felony murder in relation to Wilder's homicide and, at least by the time of trial, he knew about the surveillance videos.

Rosa argues that this Court should follow the more flexible approach recommended in the *Terrell* concurrence, but he concedes in his reply brief that this Court is obligated to follow *Terrell*. He requests that this Court initiate the procedure for convening a conflict panel under MCR 7.215(J). "A panel that follows a prior published decision only because it is required to do so by subrule (1) must so indicate in the text of its opinion . . . ." MCR 7.215(J)(2). After the opinion is released, the chief judge must poll the judges of this Court "to determine whether the particular question is both outcome-determinative and warrants convening a special panel to rehear the case for the purpose of resolving the conflict . . . ." MCR 7.215(J)(3)(a). "Special panels may be convened to consider outcome-determinative questions only." MCR 7.215(J)(3)(a).

Initiation of the conflict-panel procedure is not warranted because the question is not outcome-determinative, and because we conclude the majority opinion in *Terrell* was decided correctly, and we do not favor the proposition suggested by the concurrence. Rosa fails to satisfy the fourth prong of the *Cress* test, which addresses the probability that the new evidence would lead to a more favorable outcome. *Cress*, 468 Mich at 692. Even if the concurring opinion became adopted as law, Rosa still would not be entitled to an evidentiary hearing. Codefendants' statements were notarized, but they were not sworn. Manning recanted his letter. The statement that Rosa left his gun and phone in the Equinox seems crafted to explain why cell phone location data corroborated Rosa's presence with Manning and Hayes-Goree and why a bullet removed from the victim's body was fired by the gun associated with Rosa. Rosa had the gun and phone when he was arrested the following day, and he was recorded on multiple surveillance cameras before and after the ATM robbery. It simply is not probable that Rosa absented himself for the single most serious stage of the overnight crime spree.

Additionally, Rosa failed to offer evidence that Hayes-Goree and Manning would waive their Fifth Amendment privilege to testify on his behalf. Accordingly, their written statements would be hearsay. Under the Michigan Rules of Evidence, "hearsay" is defined as a statement that "1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." MRE 801(c). Generally, "[h]earsay is not admissible unless these rules provide otherwise." MRE 802. MRE 804 provides exceptions to the general prohibition of hearsay evidence for certain statements made by a declarant who is unavailable. A declarant is unavailable when he is exempted from testifying because of a legal privilege. MRE 804(a)(1). MRE 804(b)(4) provides an exception if an unavailable declarant's statement was a statement against interest, defined as a statement that:

> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and

> (B) must be supported by corroborating circumstances that clearly indicate its trustworthiness, if it tends to expose the declarant to criminal liability.

Manning and Hayes-Goree have already been convicted of felony murder. Rosa argued at the motion for a new trial hearing that Hayes-Goree and Manning could jeopardize their chances of receiving mitigated sentences. It is not clear, though, that admitting their responsibility and exculpating Rosa would harm them if the trial judge had discretion to impose a lower sentence; on the contrary, admitting responsibility to correct an alleged injustice could reflect favorably on them. Furthermore, their statements are not corroborated by circumstances that indicate trustworthiness. Their denial of Rosa's presence at the Huntington Bank is inconsistent with substantial evidence. The trial court therefore did not err in denying Rosa's motion for a new trial.

## III. GREAT WEIGHT OF EVIDENCE

Rosa argues that his conviction of felony murder was contrary to the great weight of the evidence. A claim that the jury's verdict was against the great weight of the evidence must be preserved in a motion for a new trial. *People v Lopez*, 305 Mich App 686, 695; 854 NW2d 205 (2014). Rosa admits that he did not preserve this issue in his motion for a new trial, although he attributes the omission to a delay in obtaining the surveillance video exhibits. This Court reviews for abuse of discretion the trial court's decision on a motion for a new trial on the ground that the verdict was contrary to the great weight of the evidence. *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). Unpreserved claims of error are reviewed for plain error affecting the party's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

"A verdict is against the great weight of the evidence and a new trial should be granted when the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v Evans*, 335 Mich App 76, 87; 966 NW2d 402 (2020). The trial court is not permitted to "sit as a thirteenth juror" and invade the jury's province "to determine questions of fact and assess the credibility of witnesses." *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998).

First-degree felony murder is defined as "[m]urder committed in the perpetration of, or attempt to perpetrate," one of the statutorily enumerated felonies, including robbery. MCL 750.316(1)(b). "The elements of first-degree felony murder are: (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in" MCL 750.316(1)(b). *People v Smith*, 478 Mich 292, 318-319; 733 NW2d 351 (2007) (quotation marks omitted). "A jury may infer malice from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm." *Carines*, 460 Mich at 759. "[T]o sustain a felony murder conviction, the prosecution must prove that each defendant had the necessary malice to be convicted of murder." *People v Robinson*, 475 Mich 1, 14; 715 NW2d 44 (2006).

"[O]ne who aids and abets a felony murder must have the requisite malice to be convicted of felony murder, but need not have the same malice as the principal." *Id*. "[A] defendant is liable for the crime the defendant intends to aid or abet as well as the natural and probable consequences of that crime." *Id*. at 14-15. " 'Aiding and abetting' describes all forms of assistance rendered to the perpetrator of a crime and comprehends all words or deeds that might support, encourage, or incite the commission of a crime." *Carines*, 460 Mich at 757 (quotation marks and citation

omitted). "The quantum of aid or advice is immaterial as long as it had the effect of inducing the crime." *People v Lawton*, 196 Mich App 341, 352; 492 NW2d 810 (1992). An aider or abettor's state of mind may be inferred from all the facts and circumstances, including a close association between the defendant and the principal and the defendant's participation in the planning or execution of the crime. *Carines*, 460 Mich at 757; *People v Bennett*, 290 Mich App 465, 474; 802 NW2d 627 (2010).

The jury could infer that Rosa aided and abetted Manning and Hayes-Goree by driving a getaway car, waiting and being ready to assist, acting as a lookout, or simply by encouraging them. The jury could likewise infer that Rosa knew and supported what Manning and Hayes-Goree were doing because Rosa was actively involved in the Family Dollar store robbery with Hayes-Goree. Rosa demonstrated malice and a willingness to use deadly force by firing his gun in the store, although no one resisted the robbery or interfered with Rosa in any respect. As described in the previous issue, Rosa, Manning, and Hayes-Goree followed a plan throughout the overnight crime spree in which two of them completed or attempted to complete a robbery, while the third waited to drive the other two away. Manning's and Hayes-Goree's exculpatory notes did not cast doubt on the jury's verdict because the notes contradicted the surveillance video evidence. Detective VanRhee's statement that Rosa's phone's location data was "less accurate" than the data from Manning's phone did not seriously undermine the reliability of the data. Their explanation that Rosa was "dropped off" and absent during the ATM robbery was unconvincing because Rosa was with them both before and after the ATM robbery. Rosa therefore fails to establish entitlement to a new trial or the necessity of an order of remand for an evidentiary hearing.

Affirmed.

/s/ Matthew S. Ackerman
/s/ James Robert Redford
/s/ Kathleen A. Feeney